# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

Case No.: 3:22-cv-44-DJH

**Darlene Oxendine**
5301 Springwood Lane
Louisville, KY 40291

AND

**Kennedy Reid**
1707 Klerner Lane
New Albany, IN 47150

    **PLAINTIFFS**

v.

**Hon. James "Hap" O. Strunk,**
    in his official capacity
    as Chair and Member, Kentucky
    Board of Embalmers and Funeral
    Directors
    9114 Leesgate Road, STE 4
    Louisville, KY 40222

And

**Hon. Jonathan Rideout,**
    in his official capacity
    as Vice-Chair and Member, Kentucky
    Board of Embalmers and Funeral
    Directors
    9114 Leesgate Road, STE 4
    Louisville, KY 40222

And

**Hon. Greg Lakes,**
    in his official capacity as Member
    Kentucky Board of Embalmers
    and Funeral Directors
    9114 Leesgate Road, STE 4
    Louisville, KY 40222

And

| | : |
|---|---|
| **Hon. Danny Percell,** | : |
|     **Individually and** | : |
|     **in his official capacity as Member** | : |
|     **Kentucky Board of Embalmers** | : |
|     **and Funeral Directors** | : |
|     **9114 Leesgate Road, STE 4** | : |
|     **Louisville, KY 40222** | : |
| | : |
| **And** | : |
| | : |
| **Hon. Ronald Raymond,** | : |
|     **in his official capacity as Member** | : |
|     **Kentucky Board of Embalmers** | : |
|     **and Funeral Directors** | : |
|     **9114 Leesgate Road, STE 4** | : |
|     **Louisville, KY 40222** | : |
| | : |

**DEFENDANTS**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COSTS, AND ATTORNEY FEES FOR CONSTITUTIONAL VIOLATIONS

Plaintiffs Darlene Oxendine ("Ms. Oxendine") and Ms. Kennedy Reid ("Ms. Reid"), by and through counsel, for their *Complaint for Declaratory and Injunctive Relief, Costs, and Attorney Fees for Constitutional Violations* (the "Complaint"), state and allege as follows:

## INTRODUCTION

1. This is an action involving the continued and threatened deprivation of the Fourth, Fifth, and Fourteenth Amendment rights of Ms. Oxendine and Ms. Reid, by the official capacity Defendants named herein, and individually and officially by Hon. Danny Percell. Specifically, this action challenges, on both a facial and as-applied matter, the apparent practice of Defendants to threaten, and perhaps, revoke licensure of anyone who challenges their enforcement process.

## PARTIES

2. Darlene Oxendine is an Apprentice at Spring Valley Funeral Home & Cremation located in Louisville, Kentucky. Ms. Oxendine resides in the State of Kentucky.

3. Kennedy Reid is an Apprentice at Spring Valley Funeral Home & Cremation located in Louisville, Kentucky. Ms. Reid resides in the State of Indiana.

4. Defendants Hon. James "Hap" O. Strunk, Hon. Johnathan Rideout, Hon. Greg Lakes, Hon Danny Percell, both in his official and individual capacity, and Hon. Ronald Raymond are the duly installed and serving members of the Kentucky Board of Embalmers and Funeral Directors ("Embalmers Board"), who are all sued in their official capacities as such. The members of the Embalmers Board and the Embalmers Board itself, are responsible, pursuant to K.R.S. 316.210, for the enforcement of K.R.S. Chapter 316, including, without limitation, the ability to bring administrative or civil enforcement actions, as well as the ability to refer enforcement matters for criminal prosecution. The Embalmers Board also, pursuant to 201 KAR 15:080, receives complaints from the public relating to potential violations of K.R.S. Chapter 316.

5. The Attorney General is served a copy of this suit, pursuant to K.R.S. 418.075, but is not named a Defendant.

6. Violations of K.R.S. Chapter 316 are punishable criminally. K.R.S. 316.990.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

8. This Court has personal jurisdiction over each defendant because each of them is domiciled within the Commonwealth of Kentucky.

9. Venue in this District and division is proper, pursuant to 28 U.S.C. §1391 and other applicable law, because all of the deprivations of Plaintiffs' Constitutional Rights occurred in Jefferson County, Kentucky, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District. As noted below, the facts and occurrences that give rise to this Complaint all occurred in Jefferson County, Kentucky.

10. A substantial portion of the events and deprivations at issue occurred in the Louisville Division of the Western District of Kentucky.

## FACTS COMMON TO ALL CLAIMS

11. Spring Valley Funeral Home & Cremation ("Spring Valley") is duly licensed by the Kentucky Board of Embalmers and Funeral Directors.

12. Plaintiffs applied for and were approved by the Board to participate in the Apprenticeship Program under KRS 316.030 and KAR 201 15:050.

13. At all times relevant hereto, Ms. Oxendine and Ms. Reid executed Apprenticeship Contracts and were Apprentices under the supervision of Anthony Oxendine of Spring Valley Funeral Homes & Cremation. (*See* **Exhibit A** – Apprenticeship Contracts)

14. On or about June 22, 2021, Spring Valley received complaint from KBFDE Falls City vs. SVFH regarding billing dispute. A response was filed on or around July 13, 2021.

15. On or about October 27, 2021, Spring Valley received a complaint from the Kentucky Board of Embalmers and Funeral Directors regarding a monument dispute.

16. On or about November 18, 2021, Defendants Hon. Danny Percell and Johnathon Rideout decided they were going to inspect Spring Valley, and specifically the Louisville Location. At that time, the family from the October 27, 2021, complaint showed up at Spring Valley. At that time, Hon. Percell attempted to negotiate between the family and Spring Valley. Hon. Percell took the original signed funeral contract related to the Complaint from Spring Valley.

17. Defendants Percell and Rideout did not provide any notice in advance that he was going to inspect the Louisville Location.

18. Hon. Percell and Rideout did not obtain a warrant for inspection of the Louisville Location.

19. On or about November 19, 2021, Spring Valley filed a response to the Complaint filed October 27, 2021. At this time, Spring Valley requested the original copy of the signed funeral contract related to the aforementioned complaint be returned to Spring Valley. To date, that document has not been returned to Spring Valley.

20. On or around December 28, 2021, a Special Call Meeting of the Kentucky Board of Embalmers and Funeral Directors as held at Percell & Son Funeral Home.

21. On or around December 29 or 30, 2021, Spring Valley received a call from Shana Norton, Hardin County Deputy Coroner, demanding to see a court order from Hardin County that allowed Spring Valley to cremate a certain deceased individual. Prior to this, Spring Valley had contracted with Hardin Memorial Hospital to cremate their indigent/non-claimed bodies and they paid the bill. Spring Valley did not proceed with the cremation of certain deceased invidual. This individual was cremated by TIES on or around January 2, 2022.

22. On or around December 29 or 30, 2021, shortly following the call with Shana Norton, Hon. Danny Percell called and demanded to see "all documents" relating to the cremation of another individual, who was also an unclaimed Hardin County body that Spring Valley was

hired to cremate by Hardin Memorial Hospital. Hon. Percell demanded that those be sent to his funeral home fax number.

23. On or around January 18, 2022, Hon. Danny Percell and Hon. Ronald Raymond again visited Spring Valley. At this time, they contacted Ms. Oxendine and Anthony Oxendine through Janice McConico, and employee of Spring Valley, and demanded that Ms. Oxendine or Anthony Oxendine return to the funeral home to be served with a subpoena. During this conversation, Hon. Percell stated that he had been appointed as the "inspector" by the Board. In addition, Hon. Percell stated to Ms. Oxendine that this is why she will not be allowed to sit for her licensing test, and that the Board voted to deny Ms. Oxendine from sitting for the licensing test. Additionally, Hon. Percell threatened that he was moving for an immediate closure of the Spring Valley facility because Mr. Oxendine was not on the premises when Hon. Percell served the subpoena. Hon. Percell left four subpoena duces tecum's at the facility, all related to Hardin County files. The subpoenas issued demanded that Mr. Oxendine appear at the Hilton Hotel in Lexington, Kentucky on February 1, 2022.

24. On or around January 18, 2022, Mr. Oxendine was not present at Spring Valley, as he was attending a funeral in New Albany. In fact, Hon. Percell admitted that he was aware Mr. Oxendine would not be present at Spring Valley, and that he knew he would be at the funeral in New Albany.

25. No one – other than Janice McConico – was present at the Louisville Location when Hon. Percell arrived.

26. No funeral directing or embalming was taking place at Spring Valley at the time of the inspection by Hon. Percell, therefore, Mr. Oxendine was not required by law to be at the premises.

27. That same day, Ms. Oxendine contacted the board to inquire about Hon. Percell's accusations and aforementioned statements. Ms. Oxendine was informed that there were "several" complaints against Spring Valley but was unable to give additional information outside of the two previously mentioned complaints. Spring Valley had never previously been notified of any other alleged complaints.

28. On or around January 19, 2022, Ms. Oxendine and Mr. Oxendine contacted Governor Andy Beshear, as well as the Ethics Committee. Governor Beshear, despite a conversation with Rev. Elliott, JR. who scheduled a meeting, stated via his Secretary that a meeting was not scheduled.

29. On or around January 21, 2022, Brian Good, attorney for Spring Valley, sent correspondence to the Kentucky Board of Embalmers and Funeral Directors, addressing the issues presented by Hon. Percell during his "inspection".

30. On or around January 25, 2022, Spring Valley produced all of the records requested in the subpoena duces tecum.

31. The allegations against Spring Valley are unrelated to the apprenticeships and applications for licensure of Ms. Oxendine and Ms. Reid.

32. Shortly thereafter, the Kentucky Board of Embalmers and Funeral Directors emailed Mr. Oxendine that per a January 11, 2022, Board meeting, Plaintiffs', Ms. Oxendine and Ms. Reid, Applications for Licensure were reviewed and delayed, due to "incompliance with the Apprenticeship Agreement discovered during the last inspection." (See **Exhibit B**) This email demanded that Ms. Oxendine and Ms. Reid attend the February 1, 2022, apprenticeship committee to discess the requirements of successful apprenticeship.

33. The Kentucky Board of Embalmers and Funeral Directors, specifically Hon. Percell in both his official and individual capacities, have applied arbitrary standards to Ms. Oxendine and Ms. Reid's apprenticeships. Plaintiffs have been held to different standards and have not been granted due process rights that similarly situated apprentices have been granted.

34. Plaintiffs have never received notice of any specific allegations or reasons regarding their alleged "incompliance with the Apprenticeship Agreement", despite numerous requests. The notice of hearing sent to Plaintiffs via email to Mr. Oxendine also did not contain a time or place for the hearing with the apprenticeship committee.

35. Plaintiffs specifically deny that they are in any way out of compliance with the apprenticeship agreement.

36. Plaintiffs have never received notice or an opportunity to respond to any allegations concerning non-compliance with their respective Apprenticeship Agreements.

37. On or about January 25, 2022, Hon. Percell stated that the documents produced in response to the subpoenas duces tecums were not correct and contained false statements. Hon. Percell threatened that the Board was intending the contact the Attorney general and that they were going to get court orders from judges for the records. He also stated they intended to issue another subpoena for embalming reports.

38. At present, there has been no filing of any formal enforcement action or formal complaint against Plaintiffs.

39. By not allowing Plaintiffs to have notice of the allegations and reasons for their alleged incompliance, the Kentucky Board of Embalmers and Funeral Directors has denied Plaintiffs their right to due process, and effectively eliminated their ability to defend themselves at the scheduled hearing.

40. The Kentucky Board of Embalmers and Funeral Directors, and specifically Hon. Percell acting in both his official and individual capacities, have overstepped the bounds of their authority by refusing to honor Plaintiffs property interest in their apprenticeships, denied Plaintiffs their rights to procedural and substantive due process, and punished Plaintiffs for their role at Spring Valley.

41. Hon. Danny Percell, who has represented his authority as an "inspector" and through his position on the board, has exceeded the scope of his official authority by acting as both an "inspector", and by sitting on the board designated to issue judgement on Plaintiffs. Through his conduct, Plaintiffs due process rights have been violated.

42. Under KRS 316.150, "the Board may refuse to issue… the license of any Kentucky licensed-embalmer or Kentucky-licensed funeral director and may issue a written reprimand and impose a fine, for" several reasons.

43. Plaintiffs have met all of the requirements for licensure under KRS 316.030, except that they have been denied access to the examination necessary for licensure.

44. Plaintiffs have paid the examination fee as set out in the administrative regulation promulgated by the board.

45. Plaintiffs are citizens of the United States of America.

46. Plaintiffs have clearly established rights and protections under the United States Constitution and its statutes to Freedom to Petition for redress of grievances and other First Amendment guarantees.

47. The Fourteenth Amendment likewise has guarantees of due process.

48. Defendants, both using their respective offices and acting under color of state law and acting individually, violated and are violating Plaintiffs' fundamental due process rights under the

Fifth and Fourteenth Amendment Rights, which have deprived, are depriving, and will deprive them of their rights guaranteed to them under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, which rights are clearly established. Defendants thereby subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief and declaratory relief under 28 U.S.C. §§ 2201, *et seq*.

49. Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate Plaintiffs' right to due process.

### Count I – Violation of KRS 316.155 and Denial of Due Process

50. Under KRS 316.155, "after denying an application for a license or a registration for an apprentice, the board shall set the matter for a hearing in accordance with **KRS Chapter 13B** upon written request of the applicant if the request is made within thirty (30) days of the **mailing of a letter of denial."**

51. Under KRS 13B.050(1), "in any administrative hearing, the agency…shall give notice of the hearing to the parties not less than twenty (20) days in advance of the date set for the hearing"

52. Under KRS 13B.050(3), "the notice required…shall be in plain language and shall include: (a) a state of the date, time, place, and nature of the hearing," and "(d) a statement of the factual basis of for the agency action along with a statement of the issues involved, in sufficient detail to give the parties reasonable opportunity to prepare evidence and argument" KRS 13B.050(3) lists additional items that need to be provided along with the notice.

53. The notice of the February 1, 2022, hearing was sent to Plaintiffs' supervisor, and not to Plaintiffs directly, on or around January 25, 2022.

54. The notice of hearing did not list a time or place for the hearing, and did not include, factual basis of for the agency action along with a statement of the issues involved, in sufficient detail to give the parties reasonable opportunity to prepare evidence and argument. KRS 13B.050(3).

55. Plaintiffs have not received a letter of denial prior to the scheduled hearing, and thus have been denied their right to due process.

56. By failing to provide adequate notice of the hearing to Plaintiffs as required under both KRS 316.155 and KRS 13B.050, Defendants have effectively denied Plaintiffs with an opportunity to defend their case and have thus denied them Due Process.

### Count II – Violation of KAR 201 15:080 & Denial of Due Process

57. Under KAR 201 15:080 Section 2, following a complaint, the Board **shall** send via certified mail, return receipt requested, a notice with a copy of the complaint to the Respondent requesting a written response.

58. Plaintiffs have not received a copy of any complaint via certified mail from the Board prior to the scheduled hearing on February 1, 2022.

59. By failing to provide adequate notice of the hearing to Plaintiffs as required by KAR 201 15:080, Defendants have effectively denied Plaintiffs with an opportunity to defend their case and have thus denied them Due Process.

### Count III – Violation of KAR 201 15:080, Section 4(3) & Denial of Due Process

60. Under KAR 201 15:080 Section 4, (3): the Board may impose disciplinary action… against a licensee or registrant if the board finds, **after the conduct of a KRS 13B hearing**, that a violation of KRS 316 or of the administrative regulations promulgated thereunder has occurred.

61. As previously stated herein, Defendants Notice of Administrative Hearing under KRS 13(B).050 is severely deficient, and does not provide Plaintiffs proper notice.

62. Prior to the February 1, 2022, hearing, Plaintiffs have been informed that their ability to complete the testing required to receive their license has been delayed by vote of the Board, which is tantamount to disciplinary action. Kentucky Board of Embalmers and Funeral Directors vote to take disciplinary action prior to the KRS13B hearing is a denial of Plaintiffs right to due process.

### Count IV –Fourteenth and Fifth Amendment *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) violation

63. Plaintiffs hereby reincorporate the preceding paragraphs of their Complaint as if fully set forth herein.

64. As noted in *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), there is a right, under the due process clause, to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.

65. The use of Hon. Percell, as both an inspector and partial and interested tribunal, is violative of due process, guaranteed by the Fourteenth and Fifth Amendment, both facially and as-applied. *See, also, Tumey v. Ohio*, 273 U.S. 510 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).

### Count V – First, Fourteenth and Fifth Amendment Violations for Prejudgement and Retaliation

66. Plaintiffs hereby reincorporate the preceding paragraphs of their Complaint as if fully set forth herein.

67. Because the Board has prejudged this enforcement case and is seeking to punish Ms. Oxendine and Ms. Reid for challenging the board's authority, for their association as apprentices with Spring Valley, and by seeking relief through the administrative and judicial review process, as demonstrated by the statements of its counsel, its actions are in contravention of the First, and Fourteenth Amendments, as set forth in *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (First Amendment retaliation claim cognizable for violation of petition for redress of injuries clause).

68. Because the board prejudged Ms. Oxendine and Ms. Reid's respective case to deny licenses for those who challenge their processes, due process is likewise violated under the Fourteenth and Fifth Amendments. *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 124 L. Ed. 2d 539, 113 S. Ct. 2264 (1993) (prejudgment of case a violation of the due process clause); *Gibson v. Berryhill*, 411 U.S. 564, 578-79, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973) (procedural due process violated by Alabama State Board of Optometry because those "with substantial pecuniary interests in legal proceedings should not adjudicate those disputes"), and *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir. 1983) (right to pursue occupation).

## Generally

69. Plaintiffs seek declaratory relief, and prospective injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, declaring that prejudgment by the Embalmers Board, and retaliation for challenging the board's action unconstitutional, facially, or as-applied to the activities set forth herein that Plaintiffs have engaged in, and seek to engage in. Plaintiffs

likewise seeks a permanent injunction enjoining these provisions and practices. Plaintiffs further seek their costs and reasonable attorney fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A. That this Court issue declaratory relief declaring Defendants' conduct to be in violation of Plaintiffs' Constitutional Right to Due Process, that prejudgment by the Embalmers Board, and retaliation for challenging the board's action unconstitutional, facially, or as-applied to the activities set forth herein that Plaintiffs have engaged in, and seek to engage in;

B. That this Court enter a temporary restraining order and/or an preliminary injunction to enjoin further violations of Plaintiffs' Constitutional Right to Due Process, prejudgment by the Embalmers Board, and retaliation for challenging the board's action, on a facial or as-applied basis, pending a trial on the merits;

C. That this Court award permanent injunctive relief, prohibiting further violations of Plaintiffs' Constitutional Right to Due Process, prejudgment by the Embalmers Board, and retaliation for challenging the board's action;

D. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

E. Such other relief as this Court shall deem just and proper.

Respectfully Submitted,

/s/Brandon N. Voelker
Dominic Capano (98724)
Brandon N. Voelker (88076)
Gatlin Voelker PLLC
50 East Rivercenter Blvd., Suite 1275

Covington, KY 41011
(859) 781-9100
bvoelker@gatlinvoelker.com